**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lyle David Stotz,<br><br>              Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security<br><br>              Defendant. | No. CV-14-02180-PHX-DGC<br><br>**ORDER** |

      Plaintiff Lyle David Stotz seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied him disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.    Background.**

      Plaintiff, a 54-year-old male, has a General Equivalency Degree and previously worked as a mechanic and a correctional officer. In September 2011, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning August 23, 2011. On April 24, 2013, he appeared with his attorney and testified at a hearing before the ALJ. A vocational expert also testified. On May 21, 2013, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the

Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision.

## II. Legal Standard.

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

## III. The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to

be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 23, 2011. At step two, the ALJ found that Plaintiff has the following severe impairments: bilateral knee osteoarthritis, right upper extremity tendonitis, chondromalacia patella,[1] and major depressive disorder. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. At step four, the ALJ found that Plaintiff has the RFC to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can frequently perform operation of bilateral foot controls. The claimant should never climb ladders, ropes, or scaffolds and occasionally climb stairs, crouch, kneel, and crawl; the claimant can frequently balance and stoop. The claimant can reach overhead with right upper extremity frequently. The claimant should avoid concentrated exposure to non-weather related extreme temperatures of hot and cold; concentrated exposure to pulmonary irritants, such as fumes, odors, dusts, gases; concentrated exposure to poorly ventilated areas. The claimant should avoid concentrated exposure to dangerous machinery with moving mechanical part[s], except motor vehicles and should avoid concentrated exposure to unprotected heights. The claimant is limited to work that is simple, routine, and repetitive.

---

[1] Chondromalacia patella is a "general term indicating damage to the cartilage under [the] kneecap." It is also known as patellofemoral pain syndrome. *Chondromalacia patella*, Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/chondromalacia-patella/basics/definition/con-20025960 (last visited April 7, 2015).

A.R. 33. The ALJ further found that Plaintiff is unable to perform any of his past relevant work. A.R. 43. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. A.R. 44.

**IV.   Analysis.**

Plaintiff argues the ALJ's decision is defective for two reasons: (1) the ALJ improperly rejected the opinions of Plaintiff's treating physicians, and (2) the ALJ incorrectly found Plaintiff can perform light work.

### A.   Weighing Medical Source Evidence.

Plaintiff argues that the ALJ improperly weighed the medical opinions of the following medical sources: Dr. Robert Kasa, Dr. Scott Kindler, and Dr. David Downs. The Court will address the ALJ's treatment of each opinion below.

#### 1.   Legal Standard.

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). A contradicted opinion of a treating or examining physician "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a

1   detailed and thorough summary of the facts and conflicting clinical evidence, stating his
2   interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th
3   Cir. 1986). "The ALJ must do more than offer [her] conclusions. [She] must set forth
4   [her] own interpretations and explain why they, rather than the doctors', are correct."
5   *Embrey*, 849 F.2d at 421-22. The Commissioner is responsible for determining whether a
6   claimant meets the statutory definition of disability and does not give significance to a
7   statement by a medical source that the claimant is "disabled" or "unable to work." 20
8   C.F.R. § 416.927(d).

### 2.   Robert Kasa, M.D.

On September 8, 2011, Dr. Robert Kasa, one of Plaintiff's treating physicians, saw Plaintiff for knee pain. A.R. 315-17. The physical examination revealed Plaintiff had normal gait, no swelling of either knee, tenderness along the patellofemoral joint, full extension and flexion of both knees, and pain when squatting. A.R. 315. X-rays revealed "good joint spaces" with "early spurring" on the right knee. *Id.* Dr. Kasa diagnosed Plaintiff with bilateral knee pain and chondromalacia patella, and the radiology report noted Plaintiff had mild osteoarthritis of the right knee. A.R. 316-17. He recommended Plaintiff do strengthening exercises and stay home from work "until further notice." A.R. 317-18. The ALJ afforded the opinion little weight because Dr. Kasa only examined Plaintiff once, the clinical findings were inconsistent with a finding that Plaintiff could not work, and the opinion was conclusory. A.R. 41-42. She noted that Dr. Kasa's finding of "no work until further notice" may have been in reference to Plaintiff's work as a correctional officer, not all types of employment. In addition, the ALJ noted that the ultimate determination of whether a claimant can work is relegated to the Commissioner, not a medical source opinion. A.R. 42.

Plaintiff asserts that Dr. Kasa's opinion should have been considered a treating source opinion by the ALJ. The length of the treatment relationship is relevant, and the regulations provide that the more times a claimant has been treated by the same source the more weight will be afforded to the opinion. 20 C.F.R. § 404.1527(c)(2)(i). Plaintiff

1  submitted evidence establishing that Dr. Kasa only examined him once, and thus Plaintiff
2  did not establish a treating relationship sufficient to demonstrate a "longitudinal picture
3  of [his] impairment[.]" *Id.*

4  Plaintiff also asserts that Dr. Kasa found that Plaintiff "does not have the knee
5  capacity" to work. Dr. Kasa's clinical findings, however, differed greatly from his
6  ultimate opinion. He found that Plaintiff can fully extend and flex both knees and had
7  mild pain in the right knee and none on the left, but nonetheless concluded that Plaintiff
8  cannot work. Dr. Kasa's opinion did not make clear whether Plaintiff was unable to
9  perform his job at the time or work at all. The ALJ's interpretation is rational given the
10 fact that Plaintiff was working as a correctional officer when he was examined, a job that
11 required much standing and walking. *See Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th
12 Cir. 2005) ("[W]e must uphold the ALJ's decision where the evidence is susceptible to
13 more than one rational interpretation.") (internal quotations omitted). In addition, Dr.
14 Kasa opined that Plaintiff was "unable to work," a finding that is not entitled to any
15 significance under the regulations. *See* 20 C.F.R. § 416.927(d). The ALJ therefore
16 discounted Dr. Kasa's opinion with specific and legitimate reasons supported by
17 substantial evidence. *Lester*, 81 F.3d at 830-31.

18        **3.      Scott Kindler, D.O.**

19 Dr. Scott Kindler examined Plaintiff twice. On July 25, 2011, Plaintiff was seen
20 for abdominal pain. A.R. 308. On September 1, 2011, Plaintiff was seen for bilateral
21 knee pain. A.R. 305. The September treatment notes indicate that Plaintiff had
22 tenderness on both knees but maintained good range of motion, had unremarkable gait,
23 and had no significant crepitus. *Id.* Dr. Kindler diagnosed bilateral knee pain, referred
24 Plaintiff to an orthopedist, and prescribed neoprene knee sleeves. *Id.* In February 2012,
25 Dr. Kindler submitted a four-sentence statement that Plaintiff "suffers from significant
26 knee pain" and "should be excused from work as he undergoes evaluation and treatment
27 for this condition." A.R. 354. The ALJ gave little weight to this opinion because it was
28 inconsistent with the findings in the treatment notes, not supported by any objective

medical evidence, and conclusory. A.R. 42.

In her decision, the ALJ set out a detailed summary and analysis of the record evidence (A.R. 33-43) which indicated that Dr. Kindler's opinion was contradicted by the opinions of Dr. Matthew Khumalo (A.R. 342-47), Dr. Thomas Disney (A.R. 89-99), and Dr. Nadine Keer (A.R. 103-115). Whereas Dr. Kindler opined Plaintiff was unable to work, all three sources found Plaintiff capable of at least medium work. Dr. Khumalo examined Plaintiff on January 18, 2012, and found Plaintiff could stand/walk 6-8 hours in an 8 hour day, climb stairs frequently, and kneel and stoop occasionally. A.R. 345-46. He noted Plaintiff had full range of motion in his right knee and partially-restricted range of motion in his left knee. A.R. 344. Dr. Disney conducted a records review and opined Plaintiff could stand/walk 6-8 hours in an 8 hour day. A.R. 97. He noted spurring in Plaintiff's right knee, but also found that Plaintiff could return to work as a correctional officer. A.R. 99. Dr. Keer also found Plaintiff capable of medium work. A.R. 112-15.

Plaintiff argues that the ALJ should not have afforded any weight to the opinion of Dr. Keer because she did not review some of Plaintiff's treatment records. These records were not generated until after Dr. Keer's review, and the ALJ reasonably relied on Dr. Keer's findings in light of the evidence available at the time. Plaintiff fails to explain how the later records would have affected Dr. Keer's findings. In addition, Dr. Keer's findings were consistent with those of Dr. Khumalo and Dr. Disney, as well as Dr. Kindler's own clinical findings.

Dr. Kindler's opinion that Plaintiff could not work was conclusory and not based on the evidence in the record. The statement was submitted almost six months after Dr. Kindler last treated Plaintiff where he found minimal limitations. Dr. Kindler's own clinical findings are consistent with those of three other doctors, all of whom found Plaintiff capable of at least medium work. Consequently, the ALJ discounted Dr. Kindler's opinion with specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830-31.

/ / /

- 7 -

### 4. David Downs, M.D.

On February 11, 2013, Dr. David Downs completed a mental residual functional capacity assessment of Plaintiff. A.R. 560-62. Dr. Downs opined Plaintiff had marked to extreme limitations in a majority of the functional categories, such as responding appropriately to changes in the workplace, understanding and remembering detailed instructions, ability to make judgments on simple work-related decisions, interacting appropriately with the public, and responding appropriately to work pressures. A.R. 560. He also found that Plaintiff would be off-task 30% of the 8 hour workday, miss 5 days or more of work per month, and would be less than 50% efficient during the workday. A.R. 561. In the "comments/clinical findings" section, Dr. Downs stated "depressed mood, poor energy, amotivation, disorganized flow of thought." *Id.* The ALJ gave this opinion little weight because Dr. Downs only saw Plaintiff one time prior to the assessment, the assessment was completed shortly after Plaintiff was released from the hospital for a suicide attempt, and the opinion was inconsistent with the medical evidence in the record since Plaintiff improved with treatment. A.R. 42.

Plaintiff argues that the ALJ gave more weight to the opinions of the state agency reviewing and consulting psychologists/psychiatrists and mental consultative examiner. But the ALJ explicitly afforded minimal weight to all the opinions because they were not privy to additional medical evidence. A.R. 41. Plaintiff offers no evidence that these decisions were given greater weight than Dr. Downs' opinion. In fact the ALJ notes that "[g]reater weight is afforded to the treating mental health records," which include the treatment notes from the Phoenix VA Health System where Plaintiff received treatment before and after the suicide attempt.

Plaintiff also asserts the ALJ improperly found that Plaintiff's condition was improving with treatment. But Dr. Downs' treatment notes dated February 4, 2013, indicate that Plaintiff "feels much better than he did and now he denies any suicidal thoughts telling me he is ashamed he ever 'did that.'" A.R. 635. A couple weeks later, Dr. Downs noted that Plaintiff's "mood is better, minimal depression/more stable than it

1. had been and believes the Perphenazine has been helpful improving his concentration and flow of thought." A.R. 619. On April 2, 2013, Plaintiff stated that he was doing "pretty good" and engaging in equine therapy for an hour every day. A.R. 815. He reported a euthymic mood and denied thoughts of suicide. *Id*. In light of this evidence, the ALJ did not err in concluding that Dr. Downs' opinion was inconsistent with the medical evidence in the record. The ALJ gave specific and legitimate reasons supported by substantial evidence. *See Rolston v. Astrue*, 298 F. App'x 661, 662 (9th Cir. 2008) (upholding ALJ's decision to discount treating source opinion because the claimant's condition improved after the opinion was provided and therefore "undermined" the assessment).

**B.     The ALJ Did Not Err in Finding Plaintiff Could Perform Light Work.**

Plaintiff contends the ALJ committed legal error by finding Plaintiff could perform light work instead of sedentary work. He states Dr. Kasa's opinion supports a finding that Plaintiff cannot stand long enough to perform light work. This argument is unpersuasive. The ALJ gave Dr. Kasa's opinion little weight for several reasons, one of which is that it appeared to reference Plaintiff's job at the time as a correctional officer. As stated above, the ALJ provided other specific legitimate reasons for rejecting the opinion. The medical evidence in the record supports the ALJ's finding that Plaintiff can perform light work, which is more conservative than the opinions of Drs. Khumalo, Disney, and Neer, all of whom believed Plaintiff could perform at least medium work. Plaintiff does not challenge any of the aforementioned source opinions. Consequently, the ALJ's finding is supported by substantial evidence.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **affirmed**. The Clerk shall enter judgment accordingly and **terminate** this case.

Dated this 17th day of April, 2015.

_____
David G. Campbell
United States District Judge